USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/11/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ZIYAN SHI,
                                    Plaintiff,

               -against-

NEW YORK DEPARTMENT OF STATE,
DIVISION OF LICENSING SERVICES, et al.,
                                   Defendants.
------------------------------------------------------------X

18 Civ. 3455 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Ziyan Shi brings this action against his employer, New York Department of State, Division of Licensing Services ("DLS"), and Ernita Gantt, the Chief of DLS. Plaintiff alleges that Defendants discriminated against him on the basis of "his East Asian national origin and race," and retaliated against him after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The Amended Complaint (the "Complaint") asserts claims of discrimination and retaliation against DLS under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Complaint also alleges claims for discrimination and retaliation against Defendant Gantt under state and local law, N.Y. Executive Law § 296 ("NYSHRL") and Administrative Code of the City of New York § 8-101 *et seq.* ("NYCHRL").

      Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) the Title VII claims are time barred and (2) the Complaint fails to state a claim for retaliation. On November 2, 2018, the Court partially converted Defendants' motion to dismiss into a motion for summary judgment on the issue of whether the Title VII claims are time barred. For the reasons discussed herein, Defendants' motion to dismiss the

1

retaliation claim for failure to state a claim is granted. The motion for summary judgment on the Title VII claims is also granted. The Court declines to exercise supplemental jurisdiction over the remaining state and local discrimination claims.

## I. BACKGROUND

### A. Defendant's Discrimination Against Plaintiff

The facts below are taken from the Complaint, exhibits attached to the Complaint and documents susceptible to judicial notice. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016). These facts are assumed to be true only for purposes of the motion to dismiss. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).

Plaintiff is a United States citizen who was born in China and who is of Chinese descent. Since May 2007, Plaintiff has been employed by DLS as a "License Investigator 1." In 2016, Plaintiff was twice denied a promotion, despite his model job performance, seniority and qualifications. Plaintiff was not promoted because of Defendant's policy and practice of discriminating against employees of "East Asian national origin and race." Plaintiff filed a charge of discrimination with the EEOC on March 22, 2018.

Shortly after Plaintiff filed his charge of discrimination, DLS began to retaliate against him. Plaintiff alleges that he was given an "impossible and unachievable" caseload and unrealistic deadlines. In early April 2017, Plaintiff was assigned extra inspections of nail salons and "appearance enhancement businesses." At this time, DLS was experiencing a "shortage of resources" resulting in a "substantial backlog of enforcement cases." Then, in a meeting on April 12, 2017 (the "April 12 Meeting"), Plaintiff was assigned three alarm installer audits and three security guard audits. Plaintiff received these assignments after Jack Bilello, the District Manager, realized that he had not assigned Plaintiff any alarm installer audits in March and had

not assigned Plaintiff any security guard audits whatsoever in 2017. Bilello said that he was assigning the additional audits so that Plaintiff could "catch up."

On April 18, 2017, Plaintiff was asked to sign a counseling memorandum (the "April 18 Memo") during a meeting with Bilello and Stephen Cavota, his supervisor. The April 18 Memo, which is attached to the Complaint as Exhibit 2, contains false and misleading information. For example, the memo states that Plaintiff "was required to submit two completed security guard audits per month and two alarm installer audits per month," but "none were completed."[1] This was misleading, because until the April 12 Meeting, Plaintiff had not been assigned any security guard audits that year. Moreover, Plaintiff was working diligently on the two alarm installer audits he had been assigned in March. Cavota and Bilello pressured Plaintiff to "just sign it," and stated that the letter "would not go to his employee file" and "was not a formal warning." Later that day, Cavota again pressured Plaintiff to sign the memo, culminating in Cavota screaming repeatedly: "[D]on't play with me, I'm not messing around, just sign it now." The April 18 Memo was retaliation for Plaintiff's charges of discrimination.

On May 17, 2017, the EEOC issued a "Notice of Charge of Discrimination" to DLS.[2] On May 22, 2017, Bilello presented Plaintiff with a new counseling memorandum (the "May 22

---

[1] The counseling memorandum originally stated that Plaintiff had "failed to" submit the audits, but Cavota edited the language after Plaintiff objected.

[2] The Court takes judicial notice that the EEOC issued a "Notice of Charge of Discrimination" to DLS on May 17, 2017. *See Rasmy v. Marriott Int'l, Inc.*, No. 16 Civ. 4865, 2017 WL 773604, at *3 (S.D.N.Y. Feb. 24, 2017) ("[C]ourts in this Circuit have routinely taken judicial notice of EEOC determinations when deciding 12(b)(6) motions targeting employment discrimination complaints. Accordingly, the Court may rely on the various EEOC filings and disposition letters submitted by the parties in resolving Marriott's motion . . . ." (citations and quotation marks omitted)); *Marcus v. Leviton Mfg. Co.*, No. 15 Civ. 656, 2016 WL 74415, at *1 n.1 (E.D.N.Y. Jan. 6, 2016), *aff'd*, 661 F. App'x 29 (2d Cir. 2016) ("This Court takes judicial notice of . . . the EEOC's Notice of Charge of Discrimination that directly stems from Plaintiff's EEOC Charge referenced in his amended complaint.").

3

Memo"). The May 22 Memo was the same as the April 18 Memo, except for new and revised language describing the April 12 Meeting. The purpose of the May 22 Memo was to create a doctored and false record in order to intimidate Plaintiff, retaliate against him for his EEOC charge and position him for termination.

Plaintiff's work environment became unbearable due to instances of harassment, alienation and mistreatment. This conduct began "within weeks of when Plaintiff filed his EEOC Charge." For example, Gantt sent an e-mail to DLS investigators soliciting feedback in connection with employee retention efforts. Plaintiff was the only investigator who did not receive the e-mail.[3]

### B.     Dismissal of EEOC Charges and Filing of Suit

The following facts are taken from Plaintiff's submissions in opposition to Defendants' motion for partial summary judgment.

On September 29, 2017, counsel for Plaintiff e-mailed the EEOC requesting a right-to-sue letter. An EEOC investigator responded on October 3, 2017, stating that he would "get . . . out the letter this week." On November 15, 2017, the investigator informed counsel that "[t]he file was sent to the Department of Justice ["DOJ"] for issuance of the Right to Sue letter. You will get it from them." Counsel replied, stating: "Our firm recently moved offices, so I am concerned that there may have been an issue with the mail forwarding process since over a month has elapsed. Would you be able to tell me whether there is a way to confirm whether and when the letter was mailed?" The investigator replied with the contact information of Karen

---

[3] The Complaint alleges that the email was sent on February 16, 2018. This allegation does not support a retaliation claim because Plaintiff filed the EEOC charge on March 22, 2018, after the alleged retaliatory email. This Opinion assumes that the reference to February is a typographical error and that the incident occurred after Plaintiff filed the EEOC complaint.

Ferguson, a Supervisory Civil Rights Analyst who was the point of contact for right-to-sue letters at DOJ.

On November 27, 2017, counsel for Plaintiff contacted Ferguson to ask whether a right-to-sue letter had been issued. Ferguson responded that the case was pending. On January 18, 2018, counsel followed up, asking for confirmation that a right-to-sue letter would be sent upon completion of DOJ's investigation. Ferguson responded later that day, stating that "[t]he RTS letter was mailed on 12/21/17 to the attention of Alexis Berkowitz at the 150 Broadway, Ste. 1402 location," and providing a certified mail tracking number (the "January 18 E-mail"). On January 19, 2018, at counsel's request, Ferguson e-mailed counsel a PDF copy of the right-to-sue letter. The right-to-sue letter is dated December 21, 2017. Plaintiff filed this action on April 19, 2018 -- 91 days after the January 18 E-mail, and 90 days after counsel received the PDF copy of the right-to-sue letter.

### C. Procedural History

On September 18, 2018, Defendants filed their motion to dismiss the Complaint. In support of the motion, Defendants submitted several documents related to the issue of when Plaintiff's counsel learned that a right-to-sue letter had been issued by DOJ. In light of these submissions, on November 2, 2018, the Court partially converted the motion to dismiss into a motion for summary judgment, solely on the issue of whether the Title VII claims are time barred. As required by Federal Rule of Civil Procedure 12(d), the parties were given an opportunity to supplement their submissions with additional evidence regarding the timeliness

issue.[4]  Plaintiff filed several documents relating to the right-to-sue letter, and each party filed a supplemental memorandum of law.

## II. STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to

---

[4] On November 19, 2018, Plaintiff's attorneys sought leave to withdraw as counsel of record and stated that their law firm was dissolving.  The Court directed counsel to file on ECF "(1) A letter appending all non-privileged information or evidence not already produced regarding when Plaintiff or Plaintiff's counsel learned that the right to sue letter had been issued, or (2) [a]n affidavit from each of Plaintiff's attorneys (a) stating that no such non-privileged information or evidence exists and (b) stating, to the best of the attorney's knowledge, when counsel learned that the right to sue letter had been issued."  On November 22, 2018, counsel for Plaintiff filed several documents in compliance with the Court's Order.

6

legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).[5]

Where a motion to dismiss presents matters outside of the pleadings, the court may consider them but only by converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). To do so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *see also Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 67–68 (2d Cir. 2014) (affirming a district court's conversion of a motion to dismiss into a motion for summary judgment where the opposing party was given sufficient notice and an opportunity to respond).

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (citations omitted). The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (citations omitted).

---

[5] Although courts liberally construe pleadings and briefs submitted by pro se litigants, Plaintiff was represented by counsel until November 27, 2018 (after the present motions were fully briefed).

## III. DISCUSSION

### A. The Complaint Fails to State a Retaliation Claim Under Title VII

The retaliation claims under Title VII are dismissed because the Complaint fails to sufficiently allege that Plaintiff suffered an "adverse employment action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). To state a claim for retaliation under Title VII, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against him, (2) 'because' he has opposed any unlawful employment practice."[6] *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)); *accord Green v. N.Y.C. Transit Auth.*, No. 15 Civ. 8204, 2019 WL 1428336, at *5 (S.D.N.Y. Mar. 28, 2019).[7] An adverse employment action for purposes of a Title VII retaliation claim includes "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *accord Burgos v. City of New York*, No. 18 Civ. 1150, 2019 WL 1299461, at *8 (S.D.N.Y. Mar. 21, 2019).

---

[6] The causation requirement for a Title VII retaliation claim requires a plaintiff to plead "but-for" causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *accord Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 n.4 (2d Cir. 2016).

[7] The Second Circuit has styled the elements of a Title VII retaliation claim in several different ways. *Compare Schultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017) ("(1) [P]articipation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action" -- i.e., a prima facie case), *with Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'r P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (same as *Schultz*, except the adverse action must be material), *and with Vega*, 801 F.3d at 90 (2d Cir. 2015) (two prongs: (1) the defendant took adverse action against the plaintiff, (2) because the plaintiff opposed an unlawful employment practice). Substantively, these standards are very similar; at bottom, the question is whether the facts alleged "give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015).

8

Plaintiff's allegations regarding the changes to his caseload are insufficient to allege an adverse action. The assignment of a challenging workload is "not sufficiently adverse to support either a discrimination or a retaliation claim." *Osby v. City of New York*, 748 Fed. App'x 375, 378 (2d Cir. Sept. 7, 2018) (discussing retaliation claims brought under the Americans with Disabilities Act ("ADA")); *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 406 (E.D.N.Y. 2016) (stating, in Rehabilitation Act case, that "[a]dditional work assignments will generally not constitute adverse actions for purposes of a retaliation claim").[8] Although "an increase in workload may sometimes be an adverse action for the purposes of a retaliation claim if the increase is heavily disproportionate to other employees similarly situated," *Hiralall v. Sentosacare, LLC*, No. 13 Civ. 4437, 2016 WL 1126530, at *13 (S.D.N.Y. Mar. 18, 2016) (discussing Title VII retaliation claim), the Complaint does not allege that the increase to Plaintiff's workload was disproportionate to similarly-situated employees.

Plaintiff's allegations regarding the counseling memoranda are likewise insufficient to allege an adverse employment action. Even a negative or critical evaluation "will not constitute an adverse employment action unless the evaluation is accompanied by other adverse consequences." *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496, 2010 WL 1326779, at *17 (S.D.N.Y. Mar. 31, 2010) (discussing Title VII retaliation claim); *see Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) ("[W]e have held, in the context of the issuance of a 'counseling memo,' that criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action [for purposes of a Title VII retaliation claim]." (citation and quotation marks

---

[8] "[T]he adverse action inquiry is the same under the Rehabilitation Act, the ADA, Title VII, and the First Amendment." *Kelly*, 200 F. Supp. 3d at 403; *see also Monroe v. Cty. of Orange*, No. 14 Civ. 1957, 2016 WL 5394745, at *18 n.20 (S.D.N.Y. Sept. 26, 2016).

9

omitted)); *accord Young v. Town of Islip*, No. 13 Civ. 4713, 2017 WL 5468752, at *6 (E.D.N.Y. Nov. 13, 2017) (same); *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009) (same); *cf. White v. Dep't of Correctional Servs.*, 814 F. Supp. 2d 374, 389 (S.D.N.Y. 2011) (finding that a counseling memorandum could constitute an adverse action for purposes of a Title VII retaliation claim in combination with a notice of discipline). Here, the Complaint does not allege that Plaintiff suffered any such adverse consequences as a result of either the April 18 Memo or the May 22 Memo. Even if the information in the counseling memoranda was false or misleading, this does not constitute an adverse employment action. *See Cody v. Cty. Of Nassau*, 345 Fed. App'x 717, 719 (2d Cir. 2009) (summary order) (holding, in context of ADA retaliation claim, that district court properly found that false accusations against plaintiff did not constitute an adverse employment action).

The Complaint also alleges that Cavota yelled and screamed at Plaintiff in order to induce him to sign the April 18 Memo, causing Plaintiff to feel humiliated and afraid. But this conduct does not rise to the level of an adverse employment action. *See Moriates v. City of New York*, No. 13 Civ. 4845, 2016 WL 3566656, at *4 n.5 (E.D.N.Y. June 24, 2016) (stating, in context of First Amendment retaliation claim, that "[y]elling amounts, at best, to 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" (quoting *Burlington Northern*, 548 U.S. at 68)); *McPherson v. City of New York*, No. 09 Civ. 4682, 2011 WL 4431163, at *8 (S.D.N.Y. Sept. 23, 2011) ("Even if Bolten 'yelled' and 'carried on' at McPherson . . . Bolten's 'simple lack of good manners' was not an adverse action [for purposes of retaliation claims under the ADA and Rehabilitation Act]." (quoting *Burlington Northern*, 548 U.S. at 68)) (alterations omitted).

The allegation that Plaintiff was not included on an e-mail sent to all of the other DLS investigators also does not rise to the level of an adverse employment action. This amounts to a "petty slight[] or minor annoyance[]" that does not rise to the level of an adverse action. *See Burlington Northern*, 548 U.S. at 68. Although Plaintiff alleges "various instances of DLS harassment, alienation, and mistreatment" and "thinly-veiled gestures to remind Plaintiff that DLS is punishing him for accusing DLS of discrimination," these conclusory allegations lack the factual specificity necessary to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Even considering all of Defendants' alleged conduct "as a whole," *O'Toole v. Cty. of Orange*, 255 F. Supp. 3d 433, 442 (S.D.N.Y. May 31, 2017), the Complaint does not sufficiently allege adverse action. For these reasons, Plaintiff's Title VII retaliation claims are dismissed.

### B. The Title VII Claims Are Not Timely

Additionally, the Title VII claims -- both the discrimination claim and the retaliation claim -- are time barred and are therefore dismissed.[9] Generally, a Title VII plaintiff must file suit within 90 days of receiving a right-to-sue letter from the EEOC or DOJ. *See Duplan v. City of New York*, 888 F.3d 612, 621–22 (2d Cir. 2018); 42 U.S.C. § 2000e-5(f)(1) (requiring the EEOC to "notify" claimants about agency dismissals and providing that claimants may file suit in federal court within 90 days of notification). A notice from a government agency is presumed to be mailed on the date shown on the notice; there is a further presumption that the notice is received three days after its mailing. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011); *accord Leon v. Dep't of Educ.*, No. 15 Civ. 7275, 2017 WL

---

[9] As discussed in Section III.A of this Opinion, the Title VII retaliation claim is dismissed for failure to allege an adverse action. The Title VII claims' untimeliness provides an independent basis for dismissal of the retaliation claim.

11

1157146, at *4 (S.D.N.Y. Mar. 27, 2017). This presumption "is not dispositive, however, if a claimant presents . . . admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to [be received]." *Tiberio*, 664 F.3d at 37 (alterations and quotation marks omitted); *accord Leon*, 2017 WL 1157146, at *4.

Even if a Title VII plaintiff does not receive a right-to-sue letter, the 90-day period will begin to run when a plaintiff has "actual notice" of the agency's closure of their case. *See Loftin v. New York State Dep't of Mental Health*, 80 F. App'x 717, 718 (2d Cir. 2003) ("Even assuming late or faulty mailing of the right-to-sue letters, Loftin had actual notice of the EEOC's closure of his case upon receipt of the EEOC's August 6, 2001 letter advising him that his case had been closed."); *see also Kerr v. McDonald's Corp.*, 427 F.3d 947, 954 (11th Cir. 2005) (actual notice may start the limitations period within a reasonable time after mailing of the right-to-sue letter); *Ball v. Abbott Advertising, Inc.*, 864 F.2d 419, 421 (6th Cir. 1988) (counsel's telephone conversation with EEOC constituted actual notice sufficient to start the limitations period); *cf. Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 116 (3d Cir. 2003) (oral notice can start the limitations period if equivalent to written notice). *But see DeTata v. Rollprint Packaging Prods Inc.*, 632 F.3d 962, 968–70 (7th Cir. 2011) (holding that oral notice did not start the limitations period).

The "actual notice" rule is well established in this Circuit. *See Carmichael v. Morrison Mgmt. Specialists*, No. 13 Civ. 692, 2014 WL 1270042, at *3 (W.D.N.Y. 2014) ("If a claimant does not receive a right to sue letter, the 90-day period begins when the claimant receives actual notice that the administrative complaint was dismissed."); *see also Taylor v. Fresh Direct*, No. 12 Civ. 2084, 2012 WL 6053712, at *5 (S.D.N.Y. Dec. 5, 2012), *report and recommendation*

12

*adopted*, 2013 WL 1897778 (S.D.N.Y. May 7, 2013) (collecting cases). The limitations period begins to run in various circumstances in which a plaintiff learns of the agency's decision independent of the right-to-sue letter. For example, the limitations period may begin to run when a plaintiff is informed of the EEOC or DOJ's decision by telephone. *See, e.g.*, *Brown v. Pratt & Whitney Div.*, No. 96 Civ. 525, 1997 WL 573462, at *1–2 (D. Conn. Aug. 28, 1997) (finding that plaintiff received notice when the EEOC informed plaintiff by telephone of the agency's decision); *Beggan v. New York Times*, No. 91 Civ. 8343, 1992 WL 111090, at *1 (S.D.N.Y. May 6, 1992) (same); *see also Hopkins v. United Parcel Serv.*, 221 F.3d 1334 (6th Cir. 2000) (same). Likewise, a plaintiff who does not receive a right-to-sue letter but receives other written confirmation of the agency's decision is on actual notice of the decision and has 90 days to file suit. *See Loftin*, 80 Fed. App'x at 718 (finding that the plaintiff had actual notice upon receipt of a letter from the EEOC advising him that his case had been closed); *Greenidge v. Ben Hur Moving & Storage, Inc.*, No. 02 Civ. 1635, 2002 WL 1796812, at *4 (E.D.N.Y. Aug. 6, 2002) (same). Actual notice can also be inferred from documents that evidence the plaintiff's knowledge that the agency dismissed the charges. *See Hilton v. Bedford Paving, LLC*, No. 08 Civ. 6552, 2011 WL 3957269, at *9 (W.D.N.Y. Sept. 7, 2011) (finding that counsel had actual notice, notwithstanding his assertion that he did not receive the right-to-sue letter, based on his reference to the EEOC's dismissal in a letter).

    This notice rule is well founded. Otherwise counseled plaintiffs with actual notice of the DOJ's dismissal of their complaint could effectively toll the statute of limitations by failing to update their address. "The courts are not required to proceed as if no such notice had been given . . . ." *Ball*, 864 F.2d at 421; *see also Greenidge,* 2002 WL 1796812, at *4 ("Where . . . the EEOC notifies the claimant's attorney that it has dismissed the charge of discrimination and

13

issued the required notice to the claimant, there is simply no rational basis for holding that the 90–day limitations period does not begin to run.").

In contrast to the Second Circuit's decision in *Loftin* -- which, as a summary order, is persuasive but not binding precedent -- at least one appellate court has declined to adopt the rule that actual notice suffices to start the limitations period. In *DeTata*, the Seventh Circuit rejected the argument that "oral notice" or "actual knowledge" of the agency's decision can affect the limitations period, distinguishing contrary precedents from the Sixth and Eleventh Circuits on the ground that those cases involved "plaintiffs [who] were somehow at fault for the delayed receipt of their written notices." *See DeTata*, 632 F.3d at 969 (discussing *Ball*, which held that a telephone call with the EEOC constituted actual notice sufficient to start the limitations period, *see Ball*, 864 F.2d at 419, and *Kerr*, which held that actual knowledge can cause the limitations period to run within a reasonable period after mailing of a right-to-sue letter, *see Kerr*, 427 F.3d at 954).

But as a doctrinal matter, it makes little sense why a plaintiff's *fault* goes to the issue of whether the plaintiff had *notice*. Fault is more pertinent in assessing whether equitable tolling is warranted, rather than in determining whether the plaintiff was "notif[ied]" of the agency's decision. 42 U.S.C. § 2000e-5(f)(1) (requiring the EEOC to "notify" claimants about agency dismissals).

In *Ebbert*, the Third Circuit held that the limitations period in an ADA case did not begin to run when the plaintiff was informed of the dismissal of her charge in a telephone conversation. The court held that an oral notification can indeed start the limitations period, but only if such notice is "equivalent to written notice." *Ebbert*, 319 F.3d at 116. The Seventh Circuit in *DeTata* interpreted this rule to mean that an oral notice sufficient to commence the 90-day period must

14

contain all of the information set forth in 29 C.F.R. § 1601.28(e).[10] But § 1601.28 merely instructs the agency what information must be included in a right-to-sue letter. It does not dictate what notice is sufficient to start the limitations period -- a matter governed by 42 U.S.C. § 2000e-5(f)(1). *See* 42 U.S.C. § 2000e-5(f)(1) (providing that if the agency has dismissed a charge or not filed a civil action within a specified period of time, the agency "shall so notify the person aggrieved," and the person may file a civil action within ninety days thereafter); *Ebbert*, 319 F.3d at 115 (stating that § 1601.28 does not "provide[] commentary to suggest that it was intended to control access to the courts"). To hold that the Title VII limitations period cannot run until a claimant has received notice comporting with § 1601.28 would rewrite Congress's statute. The Court declines to do so.

Plaintiff argues that the limitations period begins to run "on the day that the plaintiff (or the plaintiff's counsel) *actually receives* the right-to-sue letter." In support of this proposition, Plaintiff cites *Chi Ho Lin v. N.Y.C. Admin. For Children's Servs.*, No. 99 Civ. 10314, 2001 WL 964016 (S.D.N.Y. Aug. 23, 2001). In *Lin*, the court held that a pro se plaintiff's receipt of a letter informing him of the dismissal of his claim did not start the limitations period, because the letter "did not mention Mr. Lin's right to sue or the period of limitations applicable to filing suit

---

[10] The regulation states:
> (e) Content of notice of right to sue. The notice of right to sue shall include:
> > (1) Authorization to the aggrieved person to bring a civil action under title VII, the ADA, or GINA pursuant to section 706(f)(1) of title VII, section 107 of the ADA, or section 207 of GINA within 90 days from receipt of such authorization;
> > (2) Advice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate;
> > (3) A copy of the charge;
> > (4) The Commission's decision, determination, or dismissal, as appropriate.
>
> 29 C.F.R. § 1601.28(e).

in federal court." *See id.* at *4. But this information "is clearly intended to be for the benefit of a claimant lacking legal representation." *See Greenidge*, 2002 WL 1796812, at *4. Here, Plaintiff was counseled at all points relevant to the timeliness issue. Regardless of whether the January 18 E-mail would adequately apprise a pro se litigant of the relevant limitations period, it was sufficient to notify counsel that the right-to-sue letter had been issued and that Plaintiff therefore had 90 days to file suit. *See Greenidge*, 2002 WL 1796812, at *4; *Brown*, 1997 WL 573462, at *1–2; *Beggan*, 1992 WL 111090, at *1.

Plaintiff also cites *Streeter v. Joint Indus. Bd. of Elec. Indus.*, 767 F. Supp. 520 (S.D.N.Y. 1991) and *Casamento v. N.Y. Stock Exchange, Inc.*, No. 95 Civ. 201, 1995 WL 373494 (S.D.N.Y. June 22, 1995) for the proposition "that the date of receipt . . . is the relevant date." But the court in *Streeter* was not confronted with an actual notice issue; the timeliness issue in that case related to the right-to-sue letter being returned as undeliverable. *See Streeter*, 767 F. Supp. at 527. In *Casamento*, the court did not decide whether an oral notification was sufficient to start the limitations period because, even if it was, the plaintiff had filed suit well within that period. *Casamento*, 1995 WL 373494, at *2.

Accordingly, Plaintiff's Title VII claims are not timely. Plaintiff did not file suit until April 19, 2018 -- 91 days after receipt of the January 18 E-mail which put counsel on actual notice of DOJ's decision. *See Greenidge*, 2002 WL 1796812, at *4.

Plaintiff argues that if the Complaint was not timely filed, the deadline for filing should be equitably tolled. "[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations, alterations and quotation marks omitted); *accord Bamba v. Fenton*, No. 17-2870, 2018 WL

16

6331611, at *1 (2d Cir. Dec. 4, 2018). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80–81 (quotation marks omitted); *accord Perez v. Mason Tenders Dist. Council Tr. Funds*, 742 Fed. App'x 584, 585 (2d Cir. 2018) (summary order). "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016); *accord Frederick v. JetBlue Airways Corp.*, 671 Fed. App'x 831, 832 (2d Cir. 2016) (summary order).

Here, equitable tolling is not warranted because Plaintiff has not proven extraordinary circumstances beyond his control. Plaintiff's Title VII claims are untimely because counsel misapprehended the date by which the Complaint had to be filed. This does not constitute a circumstance "beyond [counsel's] control." *Menominee Indian Tribe*, 136 S. Ct. at 756. Moreover, an attorney's "garden variety neglect" is insufficient to constitute an "extraordinary circumstance" for purposes of equitable tolling. *See Perez*, 742 Fed. App'x at 585 (2d Cir. 2018) (summary order) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (alterations omitted)).

Lest this rule seem harsh in its application to this case, the Court's holding does not mean that the Plaintiff is without relief, only that he cannot assert a federal Title VII claim.

C. **The Court Declines to Exercise Supplemental Jurisdiction Over the NYSHRL and NYCHRL Claims**

The Court declines to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims. "In deciding whether to exercise jurisdiction over supplemental state-law

17

claims, district courts should balance the values of judicial economy, convenience, fairness, and comity -- the 'Cohill factors.'" *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Collins v. Lindstrom*, No. 18 Civ. 6696, 2018 WL 6547054, at *2 (S.D.N.Y. Nov. 26, 2018). "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co.*, 464 F.3d at 262; *accord Collins*, 2018 WL 6547054, at *2.

The Court declines to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350 n.7); *accord Krechmer v. Tantaros*, No. 17-4061, 2018 WL 4044048, at *3 (2d Cir. Aug. 24, 2018). *See generally Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) ("[O]ur circuit takes a very strong position that state issues should be decided by state courts."). Far from being trial ready, this case is still in the relatively early stages of litigation -- fact discovery has not closed (indeed, all deadlines have been stayed since Plaintiff's counsel's withdrawal) and no dispositive motions, other than the present ones, have been briefed or decided. Declining to exercise supplemental jurisdiction is proper under these circumstances. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306–7 (2d Cir. 2003); *accord Chapman v. Crane Co.*, 694 Fed. App'x 825, 829 (2d Cir. 2017). The Court reaches no conclusions regarding the merits of Plaintiff's NYSHRL and NYCHRL claims, which Plaintiff is free to assert in a state court action.

### D. Leave to Replead is Denied

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Acevado v. Citibank, N.A.*, No. 10 Civ. 8030, 2019 WL 1437575, at *13 (S.D.N.Y. Mar. 31, 2019). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *accord Town & Country Adult Living, Inc. v. Village/Town of Mount Kisco*, No. 17 Civ. 8586, 2019 WL 1368560, at *23 (S.D.N.Y. Mar. 26, 2019).

Plaintiff's request for leave to replead is denied. Even if Plaintiff could plead additional facts sufficient to cure the deficiencies identified in Section III.A of this Opinion, amendment would still be futile because the Title VII claims are time barred. *See Rivera v. City of New York*, No. 16 Civ. 9709, 2019 WL 252019, at *9 (S.D.N.Y. Jan. 17, 2019) (collecting cases).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the retaliation claim for failure to state a claim is GRANTED. Defendants' motion for summary judgment on the Title VII claims is also GRANTED. The Court declines to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims.

The Clerk of Court is respectfully directed to mail a copy of this order to the pro se Plaintiff, close the motion at Docket No. 26 and close the case.

Dated: April 11, 2019
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE